# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

TINA MARIE TREFETHEN,

    *Plaintiff,*

vs.

Case No. 12-1047-EFM

CAROLYN W. COLVIN, ACTING
COMMISSIONER
OF SOCIAL SECURITY,

    *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Tina Marie Trefethen seeks review of a final decision by the Commissioner of Social Security ("Commissioner")[1] denying her application for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. Trefethen claims that the Commissioner's decision should be reversed because the administrative law judge ("ALJ") relied on merely conclusory medical opinions and failed to base its decision upon the substantial evidence in the record. Because the Court finds that the ALJ's decision was supported by substantial evidence in the record, the Court finds that the decision of the Commissioner must be affirmed.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Under Rule 25(d) of the Federal Rules of Civil Procedure, Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with 42 U.S.C. § 405(g), no further action is necessary.

# I. Factual and Procedural Background

Tina Marie Trefethen was born on May 3, 1973, and was thirty-four years old on the alleged disability onset date. Prior to her alleged disability, Trefethen worked as a personal care attendant. Trefethen has a high school diploma and some college education, and she was not engaged in substantial gainful activity during the period of review.

On October 20, 2008, Trefethen filed a Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income. Both applications alleged a disability beginning on May 1, 2007. In her applications, Trefethen did not allege any physical impairments, but instead alleged that mental limitations impaired her ability to perform work. Each of Trefethen's claims were denied, both initially on December 30, 2008, and on reconsideration on March 9, 2009. Trefethen then filed a written request for hearing.

At the administrative hearing held in June 2010, Trefethen testified regarding her mental conditions. Trefethen testified that following the alleged disability onset date, she could not get along with people and suffered stress when people told her what to do. The ALJ also considered opinion evidence from Mental Health Center sources as well as reports from state agency psychological consultants, R.E. Schulman, Ph.D., and Charles Warrender, M.D.

On August 13, 2010, the ALJ issued a Decision denying Trefethen's request for benefits. The ALJ found that Trefethen had not engaged in substantial gainful activity since the alleged disability onset date. The ALJ also found that Trefethen had the following severe impairments: major depressive disorder, rule out personality disorder, and bipolar disorder. After finding that Trefethen did not have an impairment equivalent to a listed impairment, the ALJ determined that Trefethen had the residual functioning capacity ("RFC") to perform a full range of work at all

exertional levels, with the following non-exertional limitation: "[Trefethen] is moderately limited in the ability to understand, remember, and carry out detailed instructions and to maintain attention and concentration for extended periods of time."[2] The ALJ found that Trefethen was unable to perform any past relevant work but that based upon Trefethen's age, education, work experience, and RFC, a finding of "not disabled" was required. The ALJ also found that there were jobs that existed in significant numbers in the national economy that Trefethen could perform.

Trefethen timely filed a request for review of the ALJ's decision. The Social Security Administration's Appeals Council denied Trefethen's request for review on December 9, 2011. Because Trefethen has exhausted all administrative remedies available to her, the Commissioner's decision denying her application for benefits is now final and this Court has jurisdiction to review the decision.

## II. Legal Standard

Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Upon review, the Court must determine whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standard.[3] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[4] The Court is not to reweigh the evidence or substitute

---

[2] ALJ Decision, Doc. 9-2, at 18.

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted).

its opinion for the ALJ.[5] The Court must examine the record as a whole, including whatever in the record detracts from the ALJ's findings, to determine if the ALJ's decision is supported by substantial evidence.[6] Evidence is not substantial if it is overwhelmed by other evidence or if it is a mere conclusion.[7]

To establish a disability, a claimant must demonstrate a physical or mental impairment that has lasted, or can be expected to last, for a continuous period of twelve months and an inability to engage in any substantial gainful work existing in the national economy due to the impairment.[8] The ALJ uses a five-step sequential process to evaluate whether a claimant is disabled.[9] The claimant bears the burden during the first four steps.[10]

In steps one and two, the claimant must demonstrate that he is not presently engaged in substantial gainful activity and that he has a medically severe impairment or combination of impairments.[11] "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits."[12] If, however, the claimant does not establish impairment at step three, the process continues. The ALJ assesses the claimant's RFC, and at step four, the claimant must demonstrate that his impairment prevents

---

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

[6] *Wall*, 561 F.3d at 1052 (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

[7] *Id.* (citing *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005)); *see also Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

[8] 42 U.S.C. § 1382c(3)(A); *see also id.* § 423(d)(1)(A).

[9] 20 C.F.R. § 404.1520(a); *see also Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

[10] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[11] *Id.*

[12] *Id.*

him from performing his past work.[13] The Commissioner has the burden at the fifth step to demonstrate that work exists in the national economy within the claimant's RFC.[14] The RFC assessment is used to evaluate the claim at both steps four and five.[15]

### III. Analysis

Trefethen challenges the ALJ's Decision on three grounds: (1) the ALJ's evaluation of the medical opinion evidence, (2) the ALJ's evaluation of Trefethen's subjective allegations, and (3) the ALJ's RFC determination.

**A. The ALJ Properly Evaluated the Medical Opinion Evidence in the Record**

Trefethen first argues that the ALJ improperly relied upon conclusory opinions of State agency medical consultants that she believes are not an "acceptable source" under the regulations. In this case, the ALJ considered the opinions of State agency psychological consultants R.E. Schulman, Ph.D., and Charles Warrender, M.D., giving their testimony substantial weight. On December 30, 2008, after reviewing the evidence in the record, Dr. Schulman issued an opinion that Trefethen was moderately limited in her ability to understand, remember, and carry out detailed instructions, or to maintain attention for long periods of time, but was not significantly limited in any other way. On March 7, 2009, Dr. Warrender affirmed Dr. Schulman's opinion.

State agency medical consultants are generally highly qualified physicians who are experts in the evaluation of medical issues concerning disability claims under the Social Security

---

[13] *Id.*; *see also* 20 C.F.R. § 416.920(a)(4)(iv).

[14] *Id.*; *see also* 20 C.F.R. § 416.920(a)(4)(v).

[15] *See* 20 C.F.R. § 404.1520(a)(4)(iv)–(v).

Act.[16] As such, an ALJ may properly rely on the opinions of State agency consultants as acceptable sources in making a disability determination.[17] While Trefethen claims that Dr. Schulman's findings were merely conclusory statements, the record reveals that Dr. Schulman's statements were based upon his review of the evidence and his explanation of Trefethen's limitations. The ALJ reviewed these opinions and found them consistent with the evidence in the record.[18] Accordingly, the Court finds that the ALJ did not err in considering the opinions of State agency consultants.

Trefethen also argues that the ALJ erred in failing to develop the record by ordering a consultative examination. In the Tenth Circuit, the Commissioner has broad discretion in determining whether to order a consultative examination.[19] In deciding whether a consultative examination is appropriate, the principle inquiry concerns whether the record contains sufficient medical evidence for the Commissioner to make an informed decision with respect to the claimant's alleged impairments.[20] When the ALJ relies on other sources of evidence in addition to expert evaluations, the Tenth Circuit has held that a consultative examination may not be necessary or helpful to resolve the issue of impairment.[21] Here, the ALJ relied upon Trefethen's Global Assessment of Functioning (GAF) scores and the numerous treatment notes and records

---

[16] *See* SSR 96-6p.

[17] *Id.*; 20 C.F.R. §§ 404.1513, 416.913.

[18] Trefethen argues that Dr. Schulman's opinion is not entitled to substantial weight because he noted that Trefethen's appearance was "clean and appropriate" when some evidence suggested that she was not well groomed. While the record contains some references to Trefethen's difficulties with hygiene, the record also contains multiple references that her grooming was generally acceptable. Accordingly, the Court does not find references to Trefethen's grooming sufficient to assign error to the ALJ in relying upon Dr. Schulman's opinion.

[19] *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997).

[20] *See Robertson v. Chater*, 900 F. Supp. 1520, 1530 (D. Kan. 1995).

[21] *Lundgren v. Colvin*, 512 F. App'x 875, 878-79 (10th Cir. 2013) (citing *Hawkins*, 113 F.3d at 1166).

from the claimant's mental health treatment providers. Because the ALJ relied upon other substantial evidence in the record, the Court finds that a consultative examination was not "necessary or helpful to resolve the issue of impairment."[22]

**B. The ALJ Properly Evaluated the Credibility of Trefethen's Subjective Allegations**

Trefethen next argues that the ALJ erred by considering her work history and performance in college classes to determine the credibility of Trefethen's subjective complaints, including her alleged inability to work due to poor tolerance of stress, mental instability, and inability to get along with others. In evaluating evidence of non-exertional symptoms, an ALJ should consider the following: (1) whether the objective medical evidence establishes that the claimant has a physical or mental impairment capable of producing the non-exertional limitations alleged; (2) whether a loose nexus exists between the impairment and the non-exertional limitation alleged; and (3) whether the non-exertional limitation is disabling based on the objective and subjective evidence.[23] Some additional factors for consideration include: the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, and the consistency or compatibility of nonmedical testimony with objective medical evidence.[24]

A review of the ALJ's Decision confirms that the ALJ considered many of these factors when evaluating Trefethen's claim. First, the ALJ examined the credibility of Trefethen's allegations in light of the medical evidence in the record. The medical evidence suggested that

---

[22] *Id.*

[23] *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987).

[24] *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (citing *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988)).

after commencing treatment, Trefethen appeared adequately groomed on multiple occasions, with only moderate limitations in memory, attention, and concentration. The ALJ also considered evidence that on March 13, 2009, Trefethen told her treatment provider that her medication had been helpful in stabilizing her mood.

The ALJ also considered Trefethen's subjective allegations in light of her ability to function at work, at home, and in college classes. The ALJ correctly noted that Trefethen continued to work after her alleged onset date. The ALJ also considered evidence that Trefethen cared for herself by doing housekeeping chores, laundry, ironing, and lawn care, and that Trefethen was capable of caring for her sister's children. Finally, the ALJ considered Trefethen's ability to attend college classes. The record reflects that Trefethen occasionally felt overwhelmed by her classes, but there was no evidence that Trefethen could not complete assignmenst, maintain attendance, or get along with classmates.

On the basis of this information, the ALJ found that while Trefethen's impairments could reasonably be expected to cause her alleged symptoms, Trefethen's allegations concerning the intensity and limiting effects of those symptoms were not fully credible. The Court finds that the ALJ properly and fully evaluated Trefethen's subjective allegations in light of the evidence in the record, and therefore, will not disturb the ALJ's credibility determination.

**C. The ALJ Properly Evaluated Trefethen's Residual Functional Capacity**

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations."[25] Under SSR 96-8p, an RFC assessment "must include a narrative discussion describing how the evidence

---

[25] *White v. Barnhart*, 287 F.3d 903, 906 (10th Cir. 2001).

supports each conclusion, citing specific medical facts . . . and nonmedical evidence."[26] In addition, the ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence in the case record.[27] An ALJ must also "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."[28] However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."[29]

Here, the ALJ found that Trefethen had an RFC sufficient to perform a full range of work at all exertional levels, with only moderate limitations in the ability to understand, remember, and carry out detailed instructions, or to maintain attention and concentration for extended periods of time. Trefethen does not specifically dispute the ALJ's ultimate RFC finding, but instead alleges that the ALJ's assessment relied upon a misunderstanding of the medical evidence. More specifically, Trefethen complains that the ALJ confused the chronology of the medical evidence to find that her condition improved over time. The ALJ's Decision included the following statements regarding Trefethen's improvement over time: "[Trefethen] exhibited below average intellectual functioning during the Mental Health Center intake evaluation . . . .

---

[26] *See* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

[27] *Id.*

[28] *Id.*

[29] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

However after initiation of medication, the claimant's intellectual functioning was rated as average . . . ."[30]

The record reflects that the Mental Health Center completed Trefethen's intake evaluation on September 10, 2008, with a finding that Trefethen's intellectual functioning was average. Trefethen's intellectual functioning was rated again on October 7, 2008, by Liz Garton, ARNP, who remarked that Trefethen's intellectual functioning appeared below average. Trefethen essentially argues that the ALJ erred in assuming that Ms. Garton's evaluation preceded the Admission Evaluation Report when in fact it did not, and that this chronological error infected the ALJ's entire Decision.

Defendant acknowledges that the ALJ confused the chronology of those two evaluations, but argues the ALJ's confusion constitutes harmless error because other substantial evidence supports the ALJ's finding that Trefethen improved with treatment. The Tenth Circuit has held that the doctrine of harmless error applies in social security cases.[31] An error is deemed harmless when it does not have a "substantial influence" on the outcome of a case.[32]

While the ALJ mistakenly assumed that Ms. Garton's evaluation preceded the Admission Evaluation Report when in fact it did not, the ALJ considered other evidence in the record to conclude that Trefethen's condition improved with treatment. The record reflects that after starting treatment, Trefethen reported that she felt less moody and was no longer experiencing symptoms of depression, and her mood appeared brighter and more relaxed to others. Trefethen's insight and judgment were noted to be improving. In January 2009, Trefethen's

---

[30] ALJ Decision, Doc. 9-2, at 16.

[31] *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

[32] *United States v. Wacker*, 72 F.3d 1453, 1473 (10th Cir. 1995).

boyfriend conveyed that she was doing significantly better.  Trefethen reported that medications like Cymbalta and Zoloft provided improvements, even if modest, with respect to her depression and irritability.  Because the ALJ relied on other substantial evidence in the record to support the conclusion that Trefethen's condition improved with treatment, the Court finds that the ALJ's chronological confusion regarding the two above-referenced evaluations did not have a substantial influence on the outcome of this case, and therefore, constituted harmless error.

**IT IS ACCORDINGLY ORDERED** this 27th day of January, 2014, that the judgment of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE